# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ROBERT LINZY BELLON,

    *Petitioner*,

vs.

DWIGHT NEVEN, *et al.,*

    *Respondents*.

2:12-cv-01639-GMN-GWF

ORDER

This closed habeas matter under 28 U.S.C. § 2254 comes before the Court on petitioner's motion (ECF No. 44) for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

## *Background*

The Court dismissed petitioner Robert Bellon's petition as untimely on August 19, 2014; and the Court of Appeals denied a certificate of appealability on February 9, 2015.

On March 20, 2015, Bellon filed the instant motion contending that the March 10, 2015, intervening decision of the Ninth Circuit in *Rudin v. Myles*, 781 F.3d 1043 (9th Cir. 2015), *cert. denied*, 136 S.Ct. 1157 (2016), warranted vacating the judgment under Rule 60(b).

Background as to the underlying timeliness issue is detailed in full in the Court's prior dismissal order, which also sets forth the governing law as to that issue. See ECF No.34.

In broad summary, petitioner had until February 19, 2009, to file a timely state petition and, absent tolling or delayed accrual, until April 22, 2009, to file a timely federal petition. Bellon retained attorney Michael Schwartz in November 2007 to seek state but not federal post-conviction relief. Petitioner individually understood the importance of both state and

federal limitations periods, and he provided counsel with a copy of a draft state petition that he had prepared.

Schwarz ultimately missed the state filing deadline by one day, filing instead on February 20, 2009. The State raised an untimeliness defense on April 9, 2010; and petitioner was aware of the State's challenge to the timeliness of his state petition at that time.[1] On April 23, 2010, however, the state district court held from the bench that petitioner had cause to overcome the state time-bar, and the court ultimately reached the merits of all claims that could not have been raised previously on appeal. Thereafter, however, on April 11, 2012, the state supreme court held that petitioner had failed to overcome the untimeliness of the petition; and the court denied his rehearing petition challenging that holding on June 13, 2012.

Petitioner filed a second state petition on July 18, 2012; and, while the second petition still was pending, he dispatched his federal petition on or about September 11, 2012. The second state petition subsequently was dismissed as, *inter alia*, untimely; and the state supreme court affirmed the denial of relief on, *inter alia*, that basis.

### *Discussion*

Petitioner seeks relief under both Rule 60(b)(5) and (6).

Rule 60(b)(5) does not provide a basis for relief in this circumstance. Rule 60(b)(5) provides that a final judgment may be set aside if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is not longer equitable." The judgment in this habeas case has not been "satisfied, released or discharged." Nor was the judgment in this habeas case "based on an earlier judgment that has been reversed or vacated."[2] Nor did the judgment order any

---

[1] ECF No. 27-6 (Exhibit 37), at 2 ("The first I learned of any issue with my state court petition's untimeliness was when the State raised the subject in their April 2010 response.") All page citations herein are to the CM/ECF generated electronic document page number in the page header, not to any page number in the original transcript or document, unless noted otherwise.

[2] The original opinion in *Rudin* that later was vacated on rehearing had not been issued at the time of the judgment herein. However, even if the original opinion had been available and had been cited by this Court, that would not make the judgment herein "based on an earlier judgment" for purposes of Rule 60(b)(5).

1  prospective relief that might be subject to modification due to changed circumstances; it
2  simply dismissed the petition as untimely. Petitioner provides no cogent argument or apposite
3  supporting citation in any way suggesting that an intervening appellate decision from an
4  unrelated case provides a basis for relief under Rule 60(b)(5). *See generally* C. Wright, A.
5  Miller, M. Kane, *et al*., 11 *Federal Practice & Procedure* § 2863 (3d ed. 2017).

6  Rule 60(b)(6), in contrast, sets forth a catch-all provision allowing for relief from
7  judgment for "any other reason that justifies relief" under the governing jurisprudence. An
8  intervening change in the law may establish, depending upon the circumstances of the case,
9  a basis for post-judgment relief under Rule 60(b)(6). *See, e.g., Phelps v. Alameida*, 569 F.3d
10  1120, 1131-34 (9th Cir. 2009). There is no *per se* rule, however, one way or the other; and
11  the issue turns on a case-by-case inquiry. *See id.* A number of factors potentially may be
12  involved, but there is no rigid and exhaustive list of factors that must be mechanically applied
13  inexorably in each and every case. *Id.*, at 1135 & 1140. Factors discussed previously in the
14  jurisprudence instead serve merely as a guide. *Id.* In all events, however, "the exercise of
15  a court's ample equitable power under Rule 60(b)(6) to reconsider its judgment 'requires a
16  showing of 'extraordinary circumstances.''" *Id.* (quoting prior authority).

17  Following review of the opinion on rehearing in *Rudin*, the Court concludes that the
18  opinion would not have led to a different outcome in this case even if it had been issued prior
19  to the time of this Court's August 19, 2014, judgment.

20  At the very outset, with one exception discussed *infra*, *Rudin* does not change or
21  materially extend the law. In the main, *Rudin* applies the same principles and many of the
22  same precedents relied upon in the Court's prior order to a different set of facts and comes
23  to a conclusion favoring the petitioner in that case on those facts – after initially ruling the
24  other way on original hearing and with one judge dissenting from the change in result on
25  rehearing.[3]

---

[3]In contrast, in *Phelps*, the new decision resolved a split in unpublished Ninth Circuit cases on a question of law regarding how to construe California summary denials. *See* 569 F.3d at 1126-27 & 1136.

Petitioner accordingly in large part seeks to rehash the ruling in this case based upon a later appellate opinion ruling for a different petitioner on different and distinguishable facts.

In this vein, petitioner contrasts this Court's reliance upon the fact that attorney Schwartz was retained to pursue only a state petition rather than a federal petition with the conclusion in *Rudin* that this fact did not prevent a finding that attorney Figler abandoned the client in that case. In *Rudin*, Figler did not file a state petition, or anything else of substance, for nearly two years, stopped visiting the petitioner in custody, and placed a collect call block on his office phone, which rendered it virtually impossible for the petitioner to reach him. 781 F.3d at 1048-51 & 1056. In this case, Schwarz filed the state petition one day late. Whereas the *Rudin* majority concluded that Figler's inaction presented a case of abandonment under the governing case law, this Court concluded that Schwarz' failure in this case instead presented a case of attorney negligence that did not give rise to equitable tolling. The prior governing legal principles applied in *Rudin* and in this action were the same. *See, e.g., Rudin*, 781 F.3d at 1055 n.15 (distinguishing between negligence and abandonment). The different facts in the two cases just led to different results. Prior Ninth Circuit authority has concluded similarly to this case that an attorney's negligent miscalculation of a state deadline that then resulted in an untimely federal filing did not provide a basis for equitable tolling of the federal limitation period. *See Randle v. Crawford*, 604 F.3d 1047, 1057-58 (9th Cir. 2010).

Petitioner further suggests that, under *Rudin*, "the fact that Attorney Schwarz mislead Bellon into believing 'everything was fine' is actually proof that Attorney Schwarz abandoned him."[4] Bellon cites to the very same portion of *Rudin* finding that Figler abandoned the petitioner in that case. Again, Figler did not file a state petition, or anything else of substance, for nearly two years, stopped visiting the petitioner in custody, and placed a collect call block on his office phone, which rendered it virtually impossible for the petitioner to reach him. In contrast, Schwarz filed the state petition one day late, and – ignorant of his error – assured Bellon thereafter that everything was fine. There clearly is a material difference, both before

---

[4]ECF No. 55, at 4-5.

1 and after *Rudin*, between negligence by post-conviction counsel – which does not warrant
2 equitable tolling – and attorney abandonment of a petitioner – which does. *E.g., Rudin*, 781
3 F.3d at 1055 n.15. Federal habeas counsel therefore seek to characterize virtually every
4 failing by a post-conviction attorney as abandonment rather than negligence. In this case,
5 however, Schwarz and his staff simply miscalculated the state filing deadline by one day and,
6 ignorant of the error, told the client thereafter that everything was fine.[5] That is negligence,
7 not abandonment. *See, e.g., Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001)(attorney's
8 miscalculation of the limitations period and general negligence in failing to file a timely petition
9 constituted negligence that did not give rise to equitable tolling); *see also Miranda v. Castro*,
10 292 F.3d 1063, 1065-68 (9th Cir. 2002)(attorney's incorrect – *and thus misleading* – advice
11 to the petitioner as to the calculation of the limitation period constituted negligence that did
12 not give rise to equitable tolling).[6]

13     *Rudin* nonetheless did change, or at least extend, prior law in one respect. *Rudin* held
14 that the petitioner in that case was entitled to equitable tolling during the time that the state

---

[5] See, e.g., ECF No. 27-8 (Exhibit 39), at 2.

[6] The Ninth Circuit's decision in *Luna v. Kernan*, 784 F.3d 640 (9th Cir. 2015), which also was issued after the judgment in this matter, is not to the contrary. In *Luna*, the attorney, *inter alia*, led the petitioner to believe for six-plus years that litigation of his federal habeas petition was, slowly, moving forward when in fact counsel had voluntarily dismissed the partially exhausted original *pro se* federal petition without good reason and thereafter had allowed the federal limitation period to long since expire without filing a new federal petition. Nothing was pending in federal court when counsel indicated that there was, for several years running. As the *Luna* panel stated:

> . . . . Even after wrongfully dismissing Luna's original pro se petition and then missing the 1–year deadline for filing a new petition, Wiseman led Luna to believe for another six-plus years that litigation of his federal habeas petition was moving forward, albeit slowly, toward a hearing on the merits. In truth, however, nothing had been filed in federal court and the statute of limitations had long since expired.

784 F.3d at 647. That is affirmatively misleading a petitioner and constitutes egregious professional misconduct providing a basis for equitable tolling. See 784 F.3d at 642-48. In contrast, Schwarz mistakenly missed the state filing deadline by one day and thereafter, consistent with his erroneous belief that the state petition was timely, told petitioner everything was fine. That mistake is negligence, not egregious professional misconduct. *Luna* did not, and could not, overrule prior Ninth Circuit authority such as *Frye*, which it cited and distinguished. As the Ninth Circuit further noted in *Luna*, "claims for equitable tolling are inherently fact-intensive." 784 F.3d at 642. Neither *Luna* nor *Rudin* compel a ruling for petitioner on the facts in *this* case.

district court had held that the untimeliness of the petition was excused, on the basis that the later-reversed lower court holding "affirmatively misled" the petitioner. This holding in *Rudin* undercuts this Court's subsidiary holding in this case that Bellon was not entitled to equitable tolling additionally during the entirety of the time following his April 2010 notice that there was a timeliness issue in his state case after the State sought dismissal on this basis. *Rudin* therefore suggests that Bellon potentially otherwise would be entitled to equitable tolling from the state district court's April 23, 2010, oral reasons from the bench through to the state supreme court's contrary holding on the timeliness issue on April 11, 2012.

This aspect of *Rudin* does not lead to a different ultimate outcome in this case, however. Absent tolling or delayed accrual, the federal limitation period expired on April 22, 2009. Petitioner has not demonstrated a viable basis for statutory or equitable tolling or delayed accrual up through that time, for the reasons discussed in the prior order and herein. Under long-established law, as well as basic math and common sense, "extraordinary circumstances cannot toll a statute of limitations that has already run." *E.g., Rudin*, 781 F.3d at 1056 n.16.[7] Given that the state district court did not excuse the untimeliness of Bellon's first state petition until its orally stated reasons on April 23, 2010, that circumstance alone cannot provide a basis for overcoming the expiration of the federal limitation period approximately one year earlier on April 22, 2009.[8]

Accordingly, *Rudin* would not have led to a different outcome in this matter, even if the ultimate opinion on rehearing instead had been issued prior to the final judgment herein.

---

[7]In the cited footnote, the *Rudin* court went on to observe that Figler's representation began before the otherwise putative expiration of the federal limitation period in that case. Figler, however, was found to have abandoned his client; but such a finding is not supported in this case as to Schwarz, who instead was only negligent in his representation.

[8]Petitioner maintains that the tolling under *Rudin* would continue until the state supreme court denied rehearing on June 13, 2012. Tolling until this date is not supported by *Rudin*. If petitioner had a basis for reliance on the later-reversed state district court decision under the holding in *Rudin*, that basis for reliance ended when the state's highest court reached a contrary conclusion. Bellon once again was on notice that his petition was subject to dismissal – without a then-pending viable state court ruling to the contrary upon which to rely – immediately following the state supreme court's April 11, 2012, opinion on original hearing. Nor would petitioner be entitled to equitable tolling from the State's April 9, 2010, response to the district court's April 23, 2010, oral reasons. Under *Rudin*, he could rely on the oral ruling, *not* the State's challenge.

Looking to other factors potentially relevant under Rule 60(b)(6) and the case law, petitioner did pursue his equitable tolling arguments diligently previously in response to the Court's show cause order; reopening the judgment would not disturb a reliance interest separate and apart from that in the finality of judgment generally; the post-judgment motion was filed only seven months after entry of judgment in the district court, and only ten days after the *Rudin* opinion on rehearing; both *Rudin* and this case involve equitable tolling issues, albeit on different facts; and the prior judgment did not rule on the merits. *Cf. Phelps*, 569 F.3d at 1135-40 (discussion of factors as applied to that case). However, these factors, whether singly or in combination, do not outweigh the fact that *Rudin* would not have led to a different outcome even if the opinion had been available at the time of the judgment in this matter. Extraordinary circumstances such as would warrant vacating that final judgment are not presented.[9]

/ / / /

---

[9] Petitioner attaches with the reply additionally a September 14, 2015, order by a Ninth Circuit appellate commissioner detailing sundry errors and omissions by Schwarz in this and other cases. See ECF No. 55-1 (Exhibit A). The order directs Schwarz, *inter alia*, to participate in a training program designed by the Federal Public Defender and to otherwise take steps to improve his practice. The Court addresses only the issue of whether the factual record presented in this action establishes a basis for, *inter alia*, equitable tolling under the governing case law. Short of a global order by the Ninth Circuit establishing that as a matter of law any petitioner represented by Schwarz in any case automatically is entitled to equitable tolling for the entirety of such representation without regard to the underlying facts of the case, the Court's decision in this case must be based on the underlying factual record presented in this case.

The Court has no need to discuss the reasonable diligence issue in this order over and above the issue of whether extraordinary circumstances prevented the filing of a timely federal petition. The absence of discussion of the reasonable diligence issue in this order does not imply that petitioner demonstrated same.

Finally, although the point already should be implicit in the remainder of this order, the Court explicitly states that it is not persuaded by petitioner's argument that *Rudin* employs a new "mode of analysis" that requires vacating the judgment in this matter. Petitioner cites no apposite case law holding that a final judgment should be set aside under Rule 60(b)(6) because an intervening decision – while not actually changing the law (other than as noted herein) – allegedly adopted "a new mode of analysis." Petitioner relies upon *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003)(*en banc*), but that non-habeas case arose on a petition for mandamaus sought from an interlocutory ruling without entry of final judgment. Nothing in that case addresses the circumstances under which relief is available under Rule 60(b)(6), and the case otherwise is far afield from the present situation. Similarly, petitioner cites to a page from *Phelps* that clearly does not state that relief is available under Rule 60(b)(6) when an intervening appellate decision does not change the law but applies "a new mode of analysis." *See* 569 F.3d at 1134. Semantically recharacterizing an in the main distinguishable intervening decision as one "adopting a new mode of analysis" does not lead to a different result on the present motion.

1  IT THEREFORE IS ORDERED that petitioner's motion (ECF No. 44) for relief from
2  judgment is DENIED.
3  IT FURTHER IS ORDERED that, to the extent required in this procedural context, a
4  certificate of appealability is DENIED. For the reasons stated herein, reasonable jurists would
5  not find it debatable whether the district court abused its discretion in denying post-judgment
6  relief under Rule 60(b).[10]

DATED: September 19, 2017

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[10] Cf. *United States v. Winkles*, 795 F.3d 1134, 1142-43 (9th Cir. 2015)(full governing standard, as applied in a § 2255 proceeding).